# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JAMES BUSEY, individual,

        Plaintiff,

   v.

WELLS FARGO BANK NA, a national banking institution,

        Defendant.

CASE NO. 19-5880 RJB-BAT

ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on the Defendant Wells Fargo Bank NA's ("Wells Fargo") Motion to Dismiss. Dkt. 11. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

This case arises from Wells Fargo's alleged improper handling of bank accounts for two trust funds, the Busey Family Lopez Property Trust ("BFLIPT") and the Ann Busey Revocable Living Trust ("ABRLT") of which the Plaintiff, James Busey, was the co-trustee and successor trustee, respectively. Dkt. 1-1. Wells Fargo now moves to dismiss the case arguing that the lawsuit is barred by collateral estoppel and that the Plaintiff's negligence and contract claims fail

ORDER ON DEFENDANT'S MOTION TO DISMISS - 1

as a matter of law. Dkt. 11. For the reasons provided below, Wells Fargo's Motion to Dismiss (Dkt. 11) should be granted, in part, and denied, without prejudice, in part.

## I. FACTS AND PROCEDURAL HISTORY

### A. FACTS

In reviewing a motion to dismiss for failure to state a claim as is the case here, the court is generally limited to review of "the face of the complaint, materials incorporated into the complaint by reference," and matters of which judicial notice may be taken. *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d 869, 876 (9th Cir. 2012). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Id.* (*internal quotations omitted*). The following facts are taken from the Plaintiff's Complaint and the public record.

#### 1. Wells Fargo Accounts

The Complaint alleges that after the death of his parents, around December 26, 2014, the Plaintiff went to Wells Fargo in Chelan, Washington, where he lives, to open a checking and savings account for the ABRLT, in his capacity of trustee. Dkt. 1-1, at 3. It asserts that Wells Fargo filled out the paperwork for the "Certification of Trustee," that same day, December 26, 2014. *Id.*

The Complaint maintains that around January 6, 2015, the Plaintiff went back to Wells Fargo to open a checking and savings account for the BFLIPT, in his capacity of co-trustee; (the Plaintiff was one of four trustees). Dkt. 1-1, at 3. It alleges that Wells Fargo "opened the BFLIPT checking account (ending in 9043) on January 6, 2015, and the BFLIPT savings account (ending in 1854) on January 21, 2015." *Id.* The Complaint asserts that Wells Fargo "retrieved

the Certification of Trustee form filled out on December 26, 2014 for the ABRLT and erroneously wrote in the account number for the BFLIPT savings account (ending in 1854)" on the form. *Id.* It maintains that Wells Fargo filled out the wrong certification of trustee form for the BFLIPT accounts – a "California Certification of Trustee" form for this Washington trust and includes a wrong account number. *Id.* The Complaint alleges around that same day, January 21, 2015, Wells Fargo "retrieved the Certification of Trustee form filled out on December 26, 2014 for the ABRLT and erroneously wrote in the account number for the BFLIPT savings account (ending in 1854) on line 2 under the 'Account Information' section of the form." *Id.*, at 3.

The Complaint asserts that the Plaintiff, James Busey, made "routine deposits as he was receiving checks from closing his mother's (Ann Busey's) multiple accounts after her passing." *Id.*, at 4. It maintains that the Plaintiff went to Wells Fargo and "asked the teller to transfer $200K out of the ABRLT checking account and into the ABRLT savings account Plaintiff believed had been opened pursuant to his instructions to Defendant in December 2014." *Id.* The Complaint states that "shortly thereafter," he checked the account balances and discovered that Wells Fargo had mistakenly transferred the funds to the BFLIPT checking account. *Id.* The Plaintiff went into the branch and was informed that there was no ABRLT savings account. *Id.* At that point, a savings account was opened for the ABRLT and the money was taken out of the BFLIPT checking account and deposited into the newly opened ABRLT savings account. *Id.*, at 5.

### 2. State Court Lawsuit brought by one of the Trustees of the BFLIPT, Jennifer Mavin, against the Plaintiff and other Trustees

On July 13, 2016, Jennifer Mavin (the niece of the Plaintiff, a co-trustee of the BFLIPT, and a beneficiary of the BFLIPT) filed a lawsuit in San Juan County, Washington Superior Court, *In re Busey Family Lopez Island Property Trust,* case number 16-4-05055-5 ("State

1 Case"). Ms. Mavin sought an order removing the Plaintiff, James Busey from being a co-trustee

2 of the BFLIPT, appointing a successor trustee, and requiring an accounting. Dkt. 12-2. Ms.

3 Mavin also sought declaratory relief and damages. *Id.*

4     The Superior Court appointed an interim trustee, Marketa Vorel, and ordered an

5 accounting. Dkt. 1-1, at 5. As part of the Superior Court's ordered report on September 30,

6 2016, the interim trustee noted that as one of 40 discrepancies between bank statements and trust

7 accounting documents that caused the interim trustee "the most concern," was an "[u]nexplained

8 deposit and withdrawal of $200,000. On 2/5/15, the [Wells Fargo bank records for account

9 ending in 9043] show a $200,000 deposit, followed by $200,000 withdrawal on the following

10 day, but neither transaction is recorded in [James Busey's] records." *In re Busey Family Lopez*

11 *Island Property Trust,* San Juan County, Washington Superior Court case number 16-4-05055-5;

12 filed here at Dkt. 14-5. In a November 30, 2015 report, the interim trustee stated that her

13 "original conclusions regarding accounting and bank records prior to September 16, 2016, have

14 not changed: [she] suspect[s] the removed trustees used bank account(s) to receive, hold and

15 distribute trust assets which have not been disclosed to all beneficiaries, the Court or the court

16 appointed trustee." *Id.,* filed here at Dkt. 14-6.

17     (The Complaint filed in this case also alleges that during her investigation, Ms. Vorel,

18 approached Wells Fargo, requested records related to BFLIPT. Dkt. 1-1, at 5. It maintains that

19 Wells Fargo "compounded the errors described herein by then releasing all of [Plaintiff's]

20 personal information to Ms. Vorel." *Id.*)

21     Ms. Mavin filed an amended petition in the State Case, alleging in part, that:

22     [The Plaintiff here, James Busey] set up secret BFLIPT bank accounts to hide
    trust income, to the detriment of his dying brother Michael Busey [Ms. Mavin's
23     father]. The story devised by James Busey explaining the BLFIPT account at
    North Cascades Bank is not plausible, and confirms [Ms. Mavin's] initial

24

ORDER ON DEFENDANT'S MOTION TO DISMISS - 4

suspicion that [James Busey] was buying the cabin for himself. [James Busey] set up a BFLIPT bank account with money lent to him from himself and the Ann Busey Revocable Living Trust to buy the Lopez cabin, and not to help facilitate his personal loan to [others] as he claims, as he has provided no proof of this arrangement. The existence of the secret BFLIPT bank account was not disclosed to [Ms. Mavin] until her receipt of responsive records to her subpoena of Wells Fargo bank accounts in mid-March, 2017.

*In re Busey Family Lopez Island Property Trust,* San Juan County, Washington Superior Court case number 16-4-05055-5; filed here at Dkt. 14-7, at 7. In the amended petition, Ms. Mavin added the two other BFLIPT co-trustees, Steven Busey and Virginia Busey-Ferrari, in addition to naming James Busey. *Id.* They were each added in their capacity as co-trustees and individually as beneficiaries of the BFLIPT. *Id.*

### 3. Award of Attorneys' Fees in State Court Case

After the prevailing at trial in the State Case, the Plaintiff in this case, James Busey, and the others, Steven Busey and Virginia Busey-Ferrari, moved for an award of $345,000 in attorneys' fees and costs. *In re Busey Family Lopez Island Property Trust,* San Juan County, Washington Superior Court case number 16-4-05055-5; filed here at Dkt. 1-7. In a letter explaining her decision, the superior court indicated that it would award them $184,455.60 in attorneys' fees and costs. *Id.*, filed here at Dkt. 1-8. That letter provided, in part:

> In considering the equities of the parties' positions the Court has concluded that they were more or less equal at the inception of the litigation and remained so for some time thereafter. The Court expressed as much in its introductory remarks to [sic] the oral ruling at the close of [Ms. Mavin's] case in chief on November 15, 2017. Accordingly, the Court will not award [James Busey and the others] any attorneys' fees for any work performed prior to the time the North Cascades Bank ("NCB") records were received by Petitioner. Up until the Court ordered the sale of the property . . . [Ms. Mavin] had a reasonable basis to question whether or not the Trust was contractually obligated to close that sale. Thereafter, and until she received the NCB records, she had a reasonable basis to believe her claims of wrongdoing by James Busey were well founded.
> While [James Busey and the others] make much of the fact that early on [Ms. Mavin] did not avail herself of every opportunity to obtain the records she

ORDER ON DEFENDANT'S MOTION TO DISMISS - 5

sought, and that she in fact already had some of what she was requesting, an equally important fact in the Court's perception of matters is that James Busey did not, for whatever reason, demonstrate a willingness to work proactively and with full cooperation in meeting [Ms. Mavin's] requests. He in fact demonstrated the opposite. That behavior only served to heighten [Ms. Mavin's] initial concerns and suspicions, leading quickly to the filing of the . . . Petition. Had that Petition not been filed, enabling [Ms. Mavin] to subpoena records, it is almost certain that James Busey would not have provided the NCB records to [Ms. Mavin]. Ironically, those are the records that finally provided the information which should have resolved [Ms. Mavin's] remaining concerns about financial wrongdoing by James Busey. Because [Ms. Mavin] elected to pursue her claims against [James Busey and the others] after receiving the NCB records, the Court considered the equities to have shifted substantially in [their] favor at that point. . . .

The Court would also note that, even after Ms. Vorel was appointed as Interim Trustee, James Busey continued to approach matters in an unnecessarily confrontational manner, thereby creating doubt and suspicion even for Ms. Vorel and unquestionably increasing [Ms. Mavin's] belief that Mr. Busey was hiding important financial information. The fees incurred by [James Busey and the others] in their effort to limit Ms. Vorel to serving as a placeholder, as the Court had intended, and for her to refrain from conducting a financial investigation regarding the extent of Trust assets, were perhaps unavoidable, but their effort might well have been unnecessary if Mr. Busey had elected to cooperate fully, proactively, and respectfully with Ms. Vorel. Certainly, the NCB records, if given to Ms. Vorel, would have answered many questions she, as well as [Ms. Mavin] had.

[James Busey and the others] argue that [Ms. Mavin] provided no evidence to support her claims of fraud, embezzlement and misappropriation by James Busey. In the end, that turned out to be the case. But that does not mean [Ms. Mavin] had no basis to bring the claims in the first place and to persist in pursuing the matter, at least up to the point she received the NCB records. It was in fact the failure of James Busey to provide [Ms. Mavin] with all of the available information and records she asked for beginning in June 2016 that not only let to the filing of the action, but his continuing failures, particularly with respect to the NCB records, that were the primary reason the matter escalated in late 2016 and early 2017. . . Until the NCB records were received by [Ms. Mavin in March of 2017], she had a reasonable belief that James Busey was engaged in wrongdoing.

*Id.* The superior court declined to award James Busey, or the others, any of their requested costs "because none of the costs identified were incurred for matters that fall within the limited scope set forth in RCW 4.84.010." *Id.* RCW 4.84.010 allows for an award of specific costs, like costs for filing fees, fees for service of process, notary fees and reasonable expenses for reports and

ORDER ON DEFENDANT'S MOTION TO DISMISS - 6

records admitted into evidence at trial. The undersigned notes that the record in this case does not contain the final order of the superior court but the parties do not contest that a final order on the issue of attorneys' fees and costs was entered.

The superior court's decision to award attorneys' fees and costs was not appealed. The Defendant in this case, Wells Fargo, was not a party to the State Case.

**B. PROCEDURAL HISTORY**

This case was filed in Pierce County, Washington Superior Court on August 26, 2019. Dkt. 1-1. The Complaint alleges that although the Plaintiff successfully defended the legal claims in the State Case, "Plaintiff incurred damages in the form of attorneys' fees and costs in having to continually 'prove' Defendant Wells Fargo's errors regarding the $200,000 transaction were the errors of Defendant Wells Fargo and not Plaintiff James Busey." Dkt. 1-1, at 6. The Plaintiff makes claims for negligence and breach of contract. *Id.* He maintains that he was damaged "in the form of attorney's fees costs" spent in the defending the State Case and "dealing with Defendant Wells Fargo's improper release of [his] personal information." *Id.*

Wells Fargo removed the case on September 19, 2019, asserting this Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a). Dkt. 1.

**C. PENDING MOTION**

In its motion to dismiss, Wells Fargo argues that collateral estoppel precludes this lawsuit in its entirety because the issue of the proper amount of attorneys' fees and costs was actually litigated to final conclusion in the State Case. Dkt. 11. It asserts that his negligence claim should also be dismissed because: (1) the Plaintiff cannot show a duty Wells Fargo owed him independent from Wells Fargo's contractual duties and (2) the Plaintiff brings this case in his

individual capacity, and so is a non-customer to which Wells Fargo owes no duty; BFLIPT and ABRLT are the customers; the Plaintiff was merely the trustee. *Id.*

As to the Plaintiff's breach of contract claim, Wells Fargo argues that the claim should be dismissed because the contract between Wells Fargo and the trusts, the Accounting Agreement, specifically excludes consequential damages for either tort or contract claims. *Id.* It maintains that the claim for attorneys' fees and costs as a result for defending the State Case are consequential damages and so this claim is barred. *Id.* Wells Fargo further asserts that the Plaintiff's contract claim should be dismissed because, by suing in his individual capacity and not as trustee, he is a non-party to the contract and has no claim under it. *Id.*

Wells Fargo argues that leave to amend would be futile. *Id.* Wells Fargo also contends that because the Plaintiff's current lawyer was the lawyer in the State Case, there is an attorney-as-witness conflict, contrary to the Washington Rules of Professional Conduct.

The Plaintiff responds and argues that collateral estoppel does not bar his case because the superior court did not determine the same issues. Dkt. 13. He contends that it did not decide whether Wells Fargo was negligent or breached a contract. *Id.* The Plaintiff maintains that the superior court only decided how much of Plaintiff's attorneys' fees and costs Ms. Mavin was responsible for because of her actions not how much is attributable to Wells Fargo. *Id.* He argues that Wells Fargo was not a party to the State Case and that it would be an injustice to apply collateral estoppel here. *Id.*

Regarding his negligence claim, the Plaintiff argues that it should not be dismissed because Wells Fargo owed him a duty and the claim is not barred by the independent duty doctrine. *Id.* He asserts that his contract claim should not be dismissed because the Accounting Agreement offered by Wells Fargo is not proper on this motion because this is a motion to

dismiss, the copy of the agreement offered has not been signed by the Plaintiff, is of questionable admissibility, and should be subject to discovery. *Id.* The Plaintiff also maintains that even if that is the parties' contract, the amount of attorneys' fees and costs spent to defend the State Case are directly a result of Wells Fargo's errors and not consequential damages. *Id.*

The Plaintiff also states that he will be filing a motion to remand contemporaneously with the response, but as of today, no such motion has been filed. *Id.* He asserts that there is no conflict with his attorney as a witness. *Id.*

Wells Fargo replied and asserts that the damages claim for attorneys' fees and costs is barred by collateral estoppel. Dkt. 16. It argues that the Plaintiff's negligence claim should be dismissed because Wells Fargo owes the Plaintiff no duty independent of the Account Agreement. *Id.* Wells Fargo attaches two documents to the reply, entitled "Consumer Account Application," each of which state that "I have received a copy of the applicable account agreement and privacy policy . . . and agree to be bound by their terms." Dkt. 16-1. The "customer 2 name" is "James P. Busey" and a signature appears in the signature block. *Id.* Wells Fargo also maintains that it owes the Plaintiff no duty in tort as a non-customer of the bank because he is suing in his individual capacity and not as the trustee of BFLIPT or ABRLT. *Id.*

**D. ORGANIZATION OF OPINION**

This opinion will first provide the applicable standards, then address whether the claim for attorneys' fees and costs is barred by collateral estoppel, then discuss the motion to dismiss the negligence and contract claim.

**II. DISCUSSION**

**A. WASHINGTON SUBSTANTIVE AND FEDERAL PROCEDURAL LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted)*).

### B. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

### C. COLLATERAL ESTOPPEL

"Collateral estoppel, also known as issue preclusion, prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case." *Barr v. Day*, 124 Wash.2d 318, 324–25 (1994)(*internal quotation marks and citations omitted*). The Washington State Supreme Court recently reiterated, a party asserting collateral estoppel, like Wells Fargo here, must establish four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Weaver v. City of Everett*, 96189-1, 2019 WL 5251493, at *3 (Wash. Oct. 17, 2019). Each of the elements will be considered.

1. <u>Identical Issues</u>

For collateral estoppel to apply, the "issues to be precluded must have been actually litigated and necessarily decided in the first proceeding." *Sprague v. Spokane Valley Fire Department*, 189 Wash.2d 858, 899 (2018).

The issue presented here - the amount of attorneys' fees and statutorily allowed costs required to defend the State Case - is identical to that presented to the superior court. In this case, the Plaintiff James Busey claims damages against Wells Fargo for attorneys' fees and costs incurred in defending the State Case. (While the Complaint includes a claim for damages for the attorneys' fees and costs for "dealing with Defendant Wells Fargo's improper release of [his] personal information," there are no facts or other grounds to conclude that this claim differs from the claims for attorneys' fees and costs in defending the State Case. To the extent that they are the same, the following analysis applies.) The superior court was presented with the same issue - the amount of attorneys' fees and statutorily allowed costs Plaintiff expended to defend the State

Case. The actual amount of attorneys' fees and costs that were a result of defending the state litigation was fully briefed by the Plaintiff in his motion for an award of attorneys' fees in the State Case. The superior court necessarily considered the same evidence that would be presented here in deciding the amount of attorneys' fees and costs which were required to defend the case in its decision to grant the Plaintiff $184,455.60. While the Plaintiff argues that the issues presented are different in this case, he points only to the dissimilarities in the claims for liability (negligence, breach of contract vs. standards under state statue of whether a trustee should be replaced) and not differences in the issue upon which Wells Fargo seeks to collaterally estop – the amount of attorneys' fees and statutorily allowed costs expended in defense of the state action. Collateral estoppel prevents relitigation of any issue, regardless of the asserted claim, that was actually litigated in a prior lawsuit. *In re Dependency of H.S.*, 188 Wn. App. 654, 660 (2015). The first element of collateral estoppel is met.

To find to the contrary, would result in this Court deciding whether the award of attorneys' fees and costs made by the superior court in the State Case was proper. That decision was not appealed. This Court is not an appellate court for the Washington State Superior Court.

    2. <u>Judgment on the Merits</u>

The parties do not contest that the State Case ended in a judgment on the merits. The second element is met.

    3. <u>Party Against Whom Collateral Estoppel is Asserted was a Prior Party</u>

The third element is met. James Busey, the party against whom Wells Fargo seeks to assert collateral estoppel against, was a defendant in the State Case.

    4. <u>Injustice</u>

"The fourth element of collateral estoppel, the injustice element, is rooted in procedural unfairness. Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question." *Schibel v. Eymann*, 189 Wn.2d 93, 102, 399 (2017)(*internal quotation marks and citations omitted*). To determine whether collateral estoppel will work an injustice, Washington courts "ask whether the party against whom the doctrine is asserted had sufficient motivation for a full and vigorous litigation of the issue in a prior proceeding." *Weaver,* at 3 (*internal quotation marks and citations omitted*).

Application of collateral estoppel here would not work an injustice on the Plaintiff James Busey. The Plaintiff had a full and fair hearing on the amount of attorneys' fees and costs that should be awarded. He had "sufficient motivation for a full and vigorous litigation of the issue in a prior proceeding." *Weaver,* at 3. While he asserts that the award was made pursuant to RCW 11.96A.150 (which allows only the allocation of fees between the parties to the trust or estate dispute), his request was for the full amount of attorneys' fees and costs incurred. There is no "disparity of relief" between what was available in the State Case and in this Court. *Weaver,* at 4. The superior court could have awarded the full amount of attorneys' fees and costs requested but, after fully considering the issues, did not.

The Plaintiff also points out that Wells Fargo was not a party to the State Case and that it would be unjust to bar his claim for damages of attorneys' fees and costs against Wells Fargo. The Plaintiff contends that Wells Fargo was a necessary party in the State Case, which was filed in July of 2015, for an error made in February of 2015 that was corrected the next day. Yet, the Plaintiff makes no showing that anything prevented him from joining Wells Fargo in the State Case. The Plaintiff had a full opportunity to litigate the issue of the amount of attorneys' fees

and costs associated with his defense of the State Case. Application of collateral estoppel would not work an unjust here.

### 5. Conclusion on Collateral Estoppel

Plaintiff's claim in this case, for attorneys' fees and statutorily allowed costs (under state law) for defending the State Case, is barred by collateral estoppel. It is not clear whether there are other attorneys' fees or costs which were incurred which were not claimed in the State Case. (The Complaint refers to damages of attorneys' fees and costs related to Wells Fargo's improper release of the Plaintiff's personal information.) To the extent that there are other fees or costs, those damages claims are not precluded and the entire case should not be dismissed.

**D. THE ACCOUNT AGREEMENT, AND MOTION TO DISMISS THE NEGLIGENCE AND CONTRACT CLAIMS**

Wells Fargo's motion to dismiss the negligence and contract claims, while potentially well taken, hinge on the admissibility of the Account Agreement. The Plaintiff has raised questions about its admissibility and authenticity particularly because no discovery has been exchanged.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure" without converting the motion to a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice." *Id.*

Wells Fargo urges the consideration of the Account Agreement under the "incorporation-by-reference" exception. The exception does not apply. The Complaint refers to the savings and checking accounts, attaches the first page of a document entitled, "Certification of Trustee," and attaches the first pages of three documents entitled "Consumer Account Application." It does

not reference the Account Agreements. Further, even though Wells Fargo filed documents it purports are the entire Consumer Account Applications, which refer to the account agreement, the Court cannot consider pleadings filed as an attachment to the reply. At this stage, the Account Agreement cannot be considered without converting this motion to a motion for summary judgment.

The motion to dismiss the negligence and contract claims should be denied without prejudice. If there is no contract between Wells Fargo and the Plaintiff, the analysis of the negligence claim is radically different than if there is a contract. The same is true of the contract claim. The parties are encouraged to conduct expediated discovery on whether there is an applicable contract.

**E. OTHER MATTERS**

This case was removed based on diversity jurisdiction, which requires, in part, that the amount in controversy be over $75,000. The claim for attorneys' fees and costs to defend the State Case is barred by collateral estoppel. The Plaintiff indicated that he was going to file a motion for remand. Careful consideration to the real amount in controversy should be undertaken by the parties, and a motion made, if appropriate.

Further, the Court shares the concerns raised by Wells Fargo about the Plaintiff's lawyer having to act as a witness in this case contrary to Washington's Rule of Professional Conduct 3.7. While the question has not been fully briefed (both sides referenced it in their pleadings) the issue should be further considered by counsel.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Wells Fargo Bank NA's Motion to Dismiss (Dkt. 11) **IS**
- **GRANTED** as to the Plaintiff's damages claim for attorneys' fees and statutorily allowed costs in defending the State Case; and
- **DENIED WITHOUT PREJUDICE** as to the dismissal of Plaintiff's negligence and contract claims.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 23rd day of October, 2019.

*[signature]*

ROBERT J. BRYAN
United States District Judge