UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES BUSEY,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　　　Defendant. | CASE NO. C19-5880 RJB-BAT<br><br>ORDER ON WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Wells Fargo Bank's Motion for Summary Judgment (Dkt. 33). The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Wells Fargo's motion (Dkt. 33) should be granted.

## I.　RELEVANT FACTS AND PROCEDURAL HISTORY

**A. FACTS**

This matter arises out of three bad acts that Plaintiff, James Busey, alleges were made by Defendant, Wells Fargo Bank. Dkt. 36. Plaintiff is a trustee of two relevant trust accounts at Wells Fargo, the Ann Busey Revocable Living Trust ("ABRLT") and the Busey Family Lopez

Island Property Trust ("BFLIPT"). Dkt. 1-1. He is a co-trustee of the BFLIPT. *Id.* Jennifer Mavin, Plaintiff's niece, is also a co-trustee. *Id.* Plaintiff maintains that he went to Wells Fargo to open a savings account for the ABRLT, but Wells Fargo instead opened an incorrect type of checking and savings account for the BFLIPT. *Id.* The first alleged bad act is Defendant's failure to open the proper ABRLT savings account. Dkt. 36 at 1. The second alleged bad act occurred when Plaintiff requested $200,000 be transferred from the ABRLT checking account to the ABLRT savings account, which did not exist, and instead Wells Fargo transferred the money to the BFLIPT checking account. *Id*. at 3. The day after the erroneous transfer, Plaintiff informed Wells Fargo of the error, and Wells Fargo opened an ABLRT savings account and transferred the $200,000 to that account. *Id.* at 4.

The unexplained transfer of $200,000 into then out of the BFLIPT account caused concern for at least one co-trustee. *See id.* at 4–5. As a result, co-trustee Jennifer Mavin filed a lawsuit in San Juan County, Superior Court seeking to remove James Busey as a co-trustee of the BFLIPT, to appoint a successor trustee, and to require an accounting. Dkt. 12-2; *In re Busey Family Lopez Island Property Trust,* case number 16-4-05055-5 ("State Case"). As part of the State Case, the Superior Court appointed an interim trustee, Marketa Vorel, and ordered an accounting. Dkt. 1-1.

The third alleged bad act occurred when Well Fargo released information to Ms. Vorel, including information relating to the ABRLT and the BFLIPT and the erroneous deposit in question, which Plaintiff alleges Defendant "had no right to provide and to which Ms. Vorel had no right to receive." Dkt. 36 at 5.

All of these alleged bad acts arose from Plaintiff's contractual relationship with Defendant. Plaintiff eventually prevailed in the State Case and requested attorneys' fees and costs. *In re*

*Busey Family Lopez Island Property Trust,* San Juan County, Washington Superior Court No. 16-4-05055-5; filed here at Dkt. 1-7.  The Superior Court awarded only partial attorneys' fees and costs to Plaintiff and explained that decision in a letter. Dkt. 1-8.  The letter reads in relevant part:

> In considering the equities of the parties' positions the Court has concluded that they were more or less equal at the inception of the litigation and remained so for some time thereafter.
> …
> While [James Busey and the others] make much of the fact that early on [Ms. Mavin] did not avail herself of every opportunity to obtain the records she sought, and that she in fact already had some of what she was requesting, an equally important fact in the Court's perception of matters is that James Busey did not, for whatever reason, demonstrate a willingness to work proactively and with full cooperation in meeting [Ms. Mavin's] requests. He in fact demonstrated the opposite. That behavior only served to heighten [Ms. Mavin's] initial concerns and suspicions, leading quickly to the filing of the . . . Petition. Had that Petition not been filed, enabling [Ms. Mavin] to subpoena records, it is almost certain that James Busey would not have provided [relevant] records to [Ms. Mavin]. Ironically, those are the records that finally provided the information which should have resolved [Ms. Mavin's] remaining concerns about financial wrongdoing by James Busey. Because [Ms. Mavin] elected to pursue her claims against [James Busey and the others] after receiving the [relevant] records, the Court considered the equities to have shifted substantially in [their] favor at that point.
> . . .
> The Court would also note that, even after Ms. Vorel was appointed as Interim Trustee, James Busey continued to approach matters in an unnecessarily confrontational manner, thereby creating doubt and suspicion even for Ms. Vorel and unquestionably increasing [Ms. Mavin's] belief that Mr. Busey was hiding important financial information. The fees incurred by [James Busey and the others] in their effort to limit Ms. Vorel to serving as a placeholder, as the Court had intended, and for her to refrain from conducting a financial investigation regarding the extent of Trust assets, were perhaps unavoidable, but their effort might well have been unnecessary if Mr. Busey had elected to cooperate fully, proactively, and respectfully with Ms. Vorel. Certainly, the [relevant] records, if given to Ms. Vorel, would have answered many questions she, as well as [Ms. Mavin] had. [James Busey and the others] argue that [Ms. Mavin] provided no evidence to support her claims of fraud, embezzlement and misappropriation by James Busey. In the end, that turned out to be the case. But that does not mean [Ms. Mavin] had no basis to bring the claims in the first place and to persist in pursuing the matter, at least up to the point she received the [relevant] records. It was in fact the failure of James Busey to provide [Ms. Mavin] with all of the available information and records she asked for beginning in June 2016 that not only let to the filing of the action, but his

ORDER ON WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT - 3

continuing failures, particularly with respect to the [relevant] records, that were the primary reason the matter escalated in late 2016 and early 2017. . . Until the [relevant] records were received by [Ms. Mavin in March of 2017], she had a reasonable belief that James Busey was engaged in wrongdoing.

*Id.*

## B. PROCEDURAL HISTORY

Plaintiff originally filed this lawsuit in Pierce County, Washington Superior Court on August 26, 2019, requesting "damages in the form of attorneys' fees and costs" stemming from the State Case and claiming that Wells Fargo committed negligence and breach of contract. Dkt. 1-1. Defendant removed this case on September 19, 2019, on the basis of diversity jurisdiction pursuant to 28 U.S.C. 1332(a). Dkt. 1.

Defendant subsequently filed a motion to dismiss (Dkt. 11), to which Plaintiff responded (Dkt. 13), and this Court granted, in part (Dkt. 18). The Order on Defendant's Motion to Dismiss dismissed Plaintiff's claim for attorneys' fees and costs with prejudice, finding the claim to be precluded by collateral estoppel. Dkt. 18. The Order allowed Plaintiff's negligence and breach of contract claims to continue pending discovery because "while [the motion to dismiss those claims was] potentially well taken, [they] hinge on the admissibility of the Account Agreement." Dkt. 18 at 14. The Parties have since completed discovery and Plaintiff does not meaningfully dispute that the Account Agreement is the relevant contractual agreement between the parties. Dkts. 34-2 and 36.

## C. PENDING MOTION

The pending motion is Wells Fargo's Motion for Summary Judgment (Dkt. 33). Plaintiff responded (Dkt. 36) and Defendant replied (Dkt. 39). Defendant requests that both Plaintiff's negligence and breach of contract claim be dismissed with prejudice. Dkt. 33. Defendant argues that Plaintiff's negligence claim is barred by the independent duty doctrine and the breach of

1  contract claim is barred by Plaintiff's description of his damages and the plain language of the
2  contract.  *Id*

3  ## II.  DISCUSSION

4  ### A.  WASHINGTON SUBSTANTIVE LAW APPLIES

5  Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in
6  diversity jurisdiction, as here, apply state substantive law and federal procedural law.  *Gasperini*
7  *v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court
8  must apply the law as it believes the Washington Supreme Court would apply it.  *Gravquick A/S*
9  *v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no
10 convincing evidence that the state supreme court would decide differently, a federal court is
11 obligated to follow the decisions of the state's intermediate appellate courts.'"  *Vestar Dev. II,*
12 *LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees*
13 *Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted)*)).

14 ### B.  SUMMARY JUDGMENT STANDARD

15 Summary judgment is proper only if the pleadings, the discovery and disclosure materials
16 on file, and any affidavits show that there is no genuine issue as to any material fact and that the
17 movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a). The moving party is
18 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient
19 showing on an essential element of a claim in the case on which the nonmoving party has the
20 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue
21 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find
22 for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
23 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

24

metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**C. NEGLIGENCE CLAIM SHOULD BE DISMISSED**

Plaintiff's claim for negligence fails as a matter of law because Defendant did not owe Plaintiff an independent duty of care. Plaintiff suggests three ways that Defendant is liable: (1) for failing to open the ABRLT savings account, (2) for improperly co-mingling assets, and (3) for "improperly and unlawfully" releasing Plaintiff's information to a San Juan County court-appointed trustee. Dkt. 36 at 1. All of these actions arise from the contract and none of these actions, if true, violate an independent duty in tort.

*1. The independent duty doctrine governs responsibilities in contractual relationships.*

"In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Ranger Ins. Co. v. Pierce Cty.*, 164 Wash. 2d 545, 552 (2008). As both Parties acknowledge, Washington State recognizes the "independent duty doctrine" between contracting parties. *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash. 2d 84, 91 (2013). The rule is: "[w]hen no independent tort duty exists, tort does not provide a remedy." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 389 (2010). The rationale is: when parties enter into a contractual relationship, the law of contracts is better suited to govern that relationship so courts should not create recourse in tort that would not exist independent of the contract's terms. *See Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wash. 2d 157, 165 (2012). Plaintiff correctly argues that Washington courts must use the doctrine only sparingly to bar remedy in tort. *See id.* 165–66. Plaintiff's reliance on this principle, however, is misplaced. The principle governs whether to bar an available remedy in tort when an independent duty does exist, but the issue here is whether an independent duty in tort exists at all. *See id.* at 166. Without a duty outside of the contract, Plaintiff cannot maintain a claim in negligence. *See Eastwood*, 170 Wash. 2d at 389.

*2. Defendant did not owe an independent duty in tort to the Plaintiff.*

"The existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash. 2d 233, 243 (2001) (internal quotation omitted). A duty may derive either from statute or common law, but absent a duty, "an action in negligence will not lie." *Swiss Baco Skyline Logging, Inc., v. Haliewicz*, 18 Wn. App. 21, 27 (2005).

Plaintiff asserts that Defendant's actions are "practically negligence *per se*," but Plaintiff points to no statutory or common law origin of Defendant's alleged duties. *See* Dkt. 36. Where, like here, there is a contract governing an economic relationship, Courts are instead less likely to recognize a duty in tort and more likely to give deference to contract law. *See Steadman v. Green Tree Servicing, LLC.*, 2015 WL 2085565, at * 12 (W.D. Wash. 2015); Restatement (Third) of Torts: Liab. For Econ. Harm § 1 (2020).

Without demonstrating that Defendant owed Plaintiff an independent duty, Plaintiff cannot recover in tort. Defendant should be granted summary judgment for the negligence claim because Defendant did not owe Plaintiff a duty of care outside of their contract.

**D.  BREACH OF CONTRACT CLAIM**

Plaintiff's breach of contract claim should be dismissed with prejudice because there is no genuine issue of material fact, so Defendant is entitled to a judgment as a matter of law.

Plaintiff argues that Defendant breached the governing contract, which resulted in litigation in San Juan County Superior Court, and that Plaintiff is entitled "to recover the direct damages of the attorney's fees and costs he had to pay which resulted directly from Wells Fargo Bank's refusal to comply with the contract[.]" Dkt. 36 at 15. The Parties' disagree about whether attorneys' fees in the State Case are "direct" or "consequential" damages. Dkts. 33 and 36. The Court declines to decide this issue because it is unnecessary.

This Court previously ruled that Plaintiff could not recover attorneys' fees and costs from the State Case in this lawsuit because the Judge in the State Case already decided the issue and, therefore, collateral estoppel barred such recovery. Dkt. 18.

Plaintiff only vaguely alludes to additional damages, which are associated with "[t]ime not recovered" and compensation for "emotive pain." Dkt. 26-2 (answer to Interrogatory 1). The plain language of the contract, however, bars recovery of these damages.

The Account Agreement provides:

> WHETHER IN CONNECTION WITH YOUR ACCOUNT OR A SERVICE, IN NO EVENT WILL EITHER YOU OR THE BANK, OR ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, SHAREHOLDERS, OR AGENTS BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES, WHETHER ANY CLAIM IS BASED ON CONTRACT OR TORT OR WHETHER THE LIKELIHOOD OF SUCH DAMAGES WAS KNOWN TO EITHER PARTY.

Dkt. 35-1 at 14.

"In order to prevail on a breach of contract claim, a party must establish that (1) a duty imposed by the contract (2) was breached, with (3) damages proximately caused by the breach." *Work-Force Sols., Inc. v. Antoine Creek Farms, LLC*, 3 Wn. App. 2d 1010 (2018). Consequential damages are "losses that do not flow directly and immediately from an injurious act, but that result indirectly from the act." *Park Ave. Condo. Owners Ass'n v. Buchan Developments, L.L.C.*, 117 Wn. App. 369, 389 (2003) (quoting Black's Law Dictionary 394 (7th Ed. 1999)). "Time not recovered" and "emotive pain," if proved, would flow only <u>indirectly</u> from Defendant's alleged bad acts. These damages, therefore, are consequential and are barred by the plain language of the Account Agreement.

Plaintiff has neither alleged, nor established "damages resulting from the alleged breach with a reasonable degree of certainty," so the Court need not address whether Defendant breached a contractual duty. *Capitol Pros, Inc. v. Vadata, Inc.*, C17-1410-JCC, 2018 WL 3390457, at *2 (W.D. Wash. 2018) (internal citations omitted). There is no genuine issue of material fact regarding recoverable damages, and, therefore, summary judgment is appropriate. Plaintiff's breach of contract claim should be dismissed, with prejudice.

## I. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Wells Fargo's Motion for Summary Judgment (Dkt. 33) is **GRANTED**;
- Plaintiff's claims for negligence and breach of contract are **DISMISSED, WITH PREJUDICE**.
- This case is **CLOSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 5th day of October, 2020.

*[signature]*

ROBERT J. BRYAN
United States District Judge